Bbockembrough, J,
This is a case of very extraordinary aspect in many respects. Í am very strongly inclined to the opinion, that the mortgage was entirely fictitious and fraudulent; that Jones the mortgagee was at least in pari delicto with Comer the mortgagor; and that although, in a court of Jaw, ho probably might have maintained his action of detinue on the deed, which passed to him the legal title, yet when he comes into equity to foreclose the equity of redemption, he ought to be told, that in such a fraudulent and scandalous transaction, the condition of the defendant is a better one than his. I have not thought it necessary, on this occasion, to go at large into this doctrine, particularly as it has been very little discussed at the bar. I shall content myself with referring to the opinion of Coalter, J. in Starke’s ex'ors v. Littlepage, 4 Rand. 375. which appears to me to contain a great deal of sound doctrine. I shall take up the case on other grounds.
Admitting that the mortgage was executed to secure a bond fide debt, the next question is, whether, according to the proofs in the cause, wo ought not to refuse any relief to the plaintiff, on the ground, that, from the great lapse of time, the debt should be presumed to be paid or released ? *354 The mortgage was executed in August 1786, the debt was made payable on the 1st January 1788, and the bill was not filed till August 1812, a period of twenty-six years from its execution, and of more than twenty-four after the debt became due. Twenty years' is a sufficient period to authorize the presumption of payment in debt on bonds; and where it appears that the debt had not been satisfied, the jury under particular circumstances, and on account of the great lapse of time, may presume it was released. Blanshard on Lim. 93. Washington v. Brymer, Peake’s Ev. app. No. 4. So too, in mortgages even on land, the right of redeeming after twenty years is presumed to have been abandoned, and a fortiori it applies to mortgages of slaves: and if the creditor does not seek to foreclose the equity of redemption within that time, a strong presumption arises that the debt has been paid, or the deed released. Ross v. Norvel, 1 Wash. 14.
It is objected here, that as the presumption is not relied on in the answer of the executor of Comer, it cannot now be taken advantage of, in the argument of the cause. To this it may be answered, that he relied on the lapse of twenty years in his plea as a bar, and in his answer on the statute of limitations. Both of those defences were inadmissible in the form which they assumed, but they afford sufficient evidence that the defendant relied on the lapse of time to defeat the claim, and the plaintiff knew well that it was relied on, as he has taken two depositions at least, to repel the presumption. Surely, we ought not, in equity, to insist on this matter being specially pleaded, when we know that even at law it is relied on under the plea of payment. In Ross v. Norvel, the answ;er did not rely on time as an obstacle to the redemption of the mortgaged slaves, but the objection was taken by the counsel in the court of appeals. The court did not take an exception for that cause, but went into an argument to prove, that not five, but twenty years, was the period within which a redemption should be permitted. I think, then, that we may enter upon the question whether in this case the debt may be presumed to be paid, or the mortgage released.
*355 The mortgagee remained quiet without bringing a suit, for more than twenty-four years; in the mean time, however, a creditor of Comer to a small amount, filed his bill in equity against Comer and Jones the mortgagee, requiring the foreclosure of the mortgage, that the property should be sold to discharge it, and the surplus applied to the satisfaction of his debt. A decree was made in August 1791, according to the prayer of the bill, and in March ] 794, the bill was dismissed by the plaintiffs. This of itself affords the strongest presumption, that as that plaintiff was paid his debt, so the mortgage was discharged, because according to the terms of the decree, the mortgage was to be paid before the plaintiffs could receive the amount of their debt. After that period, there is some evidence to prove that Jones forbad the sale of Comer’s property when it was taken in execution, and this is relied on by the appellant, to prove that the mortgaged debt was still unsatisfied ; but, to my mind, it only proves, that Jones was guilty of a fraud on Comer’s creditors, and that he was willing to deceive them, by setting up a mortgage which had been previously discharged. This fraud cannot avail him, and ought not to be countenanced in equity. After these proceedings, Jones still remained quiet, till after the great lapse of time before mentioned, and till after Comer had sunk into his grave.
Let us now advert to the evidence, which is relied on to repel the presumption of satisfaction arising from time, and the circumstances just mentioned. This consists of the depositions of Elizabeth Jones, and Peter Bland, who testify to acknowledgments made by Corner, some short time before his death. This evidence is liable to the objection, that it relates to mere casual conversations, which occurred fifteen and thirteen years before the depositions were taken. Mrs. Jones’s evidence is liable to the further objection, that it relates a conversation, which, she says, happened during an illness before the one of which Comer died. Now, it is proved by another witness, that Comer was not ill, at any time, for five or six years before his last illness. The attack made on the credit of Bland has not been successful. He *356 is proved to be a man of good character. Admitting, however, that Comer did'make the remark ascribed to him, it ought not to be deemed sufficient to repel the presumption arising from the before mentioned circumstances. Bland, wished to extract from Comer some information respecting the validity of the mortgage. He told Comer, that he had been under the impression, that the deed was a fraudulent one. Comer replied, that “ he was mistaken; that the deed was given for a valuable consideration; that Jones was justly entitled to the property conveyed by the deed.” It may have been on valuable consideration, and yet the debt subsequently discharged. And it does not appear, at what time Jones was justly entitled to the property, whether at the time the deed was executed, or at the time he was speaking. If the former, it was not incompatible with the fact, that the title had been subsequently released. It was, moreover, a loose remark; for the mortgagor had possession of the property, and had a right to redeem it; how, then, could he say that Jones had a just title to it 1 I do not think that a jury would attach any weight to an admission s& made, and under the circumstances then existing.
This repelling evidence is counterbalanced by another fact, which goes strongly to fortify the presumption arising from time, and from the decree of 1791. I refer to the fact of Jones’s embarrassed circumstances. Several witnesses prove, that he was oppressed with debts for twenty or thirty years before his death. He could not keep his property together, says one of them, without using the assets of the numerous estates which came to his hands. It is not at all probable, that a man so situated would permit his debtor to retain for a space of twenty-four years, so large a debt, without calling him to account; he must have been conscious, that Comer could prove satisfaction or a release. I think the decree should be affirmed.
Carr, J
I have given this record a most careful examination, and have seldom risen from such a task, with stronger convictions than I feel, that there is nothing due to *357 Jones, and that we ought to affirm the decree. With respect to Starke v. Littlepage, it does not seem to me necessary to say any thing. It is the decision of a divided court of three, which we never consider as authority. I think the opinion of judge Coalter, in that case, was right; and I cannot find any thing in the cases, cited by our late worthy brother Creen, to authorize the rule he has drawn from them. Strictly speaking, I think the plea in this case, of the former suit and decree, is a good bar; for the dismissal of that suit by the plaintiffs at that stage, could never affect the order, so far as it related to the settlement between Jones and Comer: that was res adjudicata. There are cases enough to shew, that such a suit is a good bar; but I do not think it is worth while to touch the point. The great matter is, that the mortgage and the debt, and the whole machinery, is a fiction. This is a matter of fact, and need not be commented on. I think the decree should be affirmed.
Cabeal, J. I am for affirming the decree.
Tucker, P.
I am entirely satisfied, from the facts appearing in this case, that the mortgage was fraudulently contrived to cover Comer’s property from the demands of his creditors. In this aspect of the case, although I do not question the decision of Starke v. Littlepage, which rests upon the express provision of the statute, that a fraudulent deed shall be held good between the parties, yet I cannot agree that a court of equity should open its doors to a man who is guilty of the duplicated fraud, first of aiding to deceive the creditors of his friend, and then of defrauding that friend by keeping the property to himself. If he has the legal title under the statute, let him get the property at law, if he can. Let him even by a recovery there exclude the defendant from redemption. I would not extend relief to the fraudulent mortgagor, unless upon mature reflection, I should be unable to get over the authority of Austin’s adm’r v. Winston’s ex’or, 1 Hen. & Munf. 32. I incline to the opinion, expressed by the court in Brackenbury v. Brackenbury, 2 *358 Jac. & Walk. 390. that, in an illegal transaction like this, in which both parties are guilty of a combination to defraud others, a court of equity should give aid to neither. I have diligently searched, and I find no case in which a fraudu^ent mor(gagee> whose mortgage was a fraud on others, has been entertained on a bill to foreclose. What does the plaintiff ask here ? not surely to give him the property, but, by an equitable proceeding, to foreclose the defendant, and to quiet him thereby from future demands. What right has he who has been party to a gross fraud, to ask protection from the harassings of the partner in his guilt ? Nay more, what right has he to expect the court of equity to extend the statute of limitations from five years to twenty, in his behalf? What merits of his entitle him to this indulgence ? Yet, if he is entertained here, presumption of payment or of release cannot be raised under twenty years, whereas if he sues at law he is barred by five years possession adverse to his claim.
It is true, the cases are very strong to the point, that a party shall not be received to set up a defence at law, which is founded upon his own fraudulent conduct. Montefiori v. Montefiori, 1 W. Blacks. 363. I have, however, met with no case in equity, in which this principle has been applied to the protection of a plaintiff, upon whom a gross fraud has been fixed. So far from it, that there are cases to be found, which sustain the principle of Austin’s adm’r v. Winston’s ex’or, in relieving a particeps criminis, because he is not in pari delicto ; Osborne v. Williams, 18 Ves. 379. Surely, no case can arise in which the disparity is greater than this, where the debtor commits the fraudulent act under the grinding pressure of his necessities; while the false friend whom he associates with him, has no such duress operating upon him, and by his conduct has excluded even the suspicion, that he was betrayed into injustice to others, by the amiable weaknesses of our nature. Standing even thus, the debtor would not be in pari delicto ; but when to this the party adds the double fraud of betraying him whom he affected to serve, his guilt is immeasurably *359 greater than that of the unfortunate victim of the res an-gusto domi. To such a plaintiff I do not think the law permits us to minister.
Decree affirmed.